**AFFIRM; Opinion issued March 20, 2013**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00419-CR

### BEN MELTON TRAYLOR, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F10-51279-L**

## MEMORANDUM OPINION
Before Justices Francis, Lang, and Evans
Opinion by Justice Francis

A jury convicted Ben Melton Traylor of aggravated robbery, and the trial court imposed punishment at twenty years in prison. In four issues, appellant complains about the corroboration of the accomplice-witness's testimony, jury charge error, and improper argument. We conclude these issues are without merit and affirm the trial court's judgment.

Albino Ocanas and Sandra Loya were standing outside Loya's apartment complex at night when a white car with chrome rims drove slowly past them. Ocanas said the car stopped about thirty feet away, and two men dressed in dark clothing got out and approached them. The taller man, identified as appellant, carried a rifle; the second man, appellant's brother Jimmy Traylor, was armed with a pistol. Appellant pointed the rifle at Ocanas and Loya, and Jimmy held his pistol to Loya's back. Ocanas asked the men not to shoot, and appellant demanded

money. Jimmy searched Ocanas and took his wallet and $60. The men then fled in the car. Both Ocanas and Loya feared they would be hurt or killed. The entire encounter took only minutes, and neither Ocanas nor Loya could identify appellant or Jimmy Traylor as the robbers at trial.

Ocanas immediately called 911 from his cell phone, and the police arrived in two to three minutes. According to the responding officer, Ocanas described the robbers as two black men, wearing all black, with black stocking or beanie caps. One carried a pistol and the other had a rifle or shotgun. The officer broadcast a description of the getaway car. Officer Blake Peebles was parked at a convenience store a few blocks away from the crime scene. Within minutes of the broadcast, Peebles saw a car pass matching the description. The car had three occupants. Peebles followed the car and activated his in-car video camera system. After several seconds, he activated his lights and siren to initiate a stop. Just as he did, Jimmy Traylor jumped out of the moving car and fled. Another officer went after Jimmy while Peebles continued to follow the white car. During the brief, slow-speed chase, Peebles saw a rifle being moved around inside the vehicle before it was tossed from the rear right side window where appellant was seated. A minute later, the driver, identified as Marvin Pace, stopped the vehicle, jumped out, and took off running.

Appellant surrendered at the scene. Police found Pace and Jimmy Traylor hiding in the area. All three men were wearing dark clothing. The rifle that had been thrown from the car was retrieved by the police. The rear stock of the gun, including the trigger mechanism, was missing, rendering it incapable of being fired. The gun did have a trigger, and an officer testified that someone unfamiliar with guns would not know that it could not be fired. The recording of the chase was admitted into evidence.

2

At trial, Pace testified against the Traylors in exchange for a reduced sentence. Pace said he and Jimmy talked about committing a robbery a week before the incident. On the day of the robbery, he received a text from Jimmy asking if he was "ready to get this money." Pace picked up appellant and Jimmy. Appellant had a shotgun and sat in the back seat; Jimmy sat up front. Pace drove to the Jefferson area, where they saw Ocanas and Loya standing outside an apartment complex. Jimmy told Pace to turn the car around, turn off the lights, and leave the car running. Appellant and Jimmy got out of the car and returned about two minutes later. Jimmy had a wallet and some cards or papers, and appellant had money. Although Pace said he could not see what happened, he knew what the Traylors were going to do. Pace said he drove off. When the police began to follow them, appellant told him to keep driving until he could throw out the shotgun.

Pace admitted that he told the police a different account of the incident. He also admitted he had several prior convictions and acknowledged he had been hospitalized several times for mental illness issues. Pace had been diagnosed as "schizoaffective, bipolar type, poly-substance dependency." Pace admitted that his illness "sometimes" makes him delusional, but said he did not make up what happened in this case because of any psychotic episode or experience.

In his first issue, appellant contends the State failed to present sufficient non-accomplice testimony to corroborate the testimony of Pace, who was an accomplice as a matter of law, and therefore the evidence is legally insufficient to support the conviction.

The accomplice-witness rule provides that a conviction cannot stand on accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (2005). In making our review, we eliminate all of the accomplice testimony from consideration and then examine the remaining portions of the

3

record to see if there is any evidence that tends to connect the accused with the commission of the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be "other" evidence "tending to connect" the defendant to the offense alleged in the indictment. *Id.*

The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). The direct or circumstantial evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Id.* If there are conflicting views of the evidence, the reviewing court should defer to the fact-finder's resolution of the evidence. *Id.* Evidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence that may, when combined with other suspicious circumstances, sufficiently connect the defendant with the offense. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

The corroborating evidence shows the following: Ocanas testified two black men wearing dark clothing approached him and Loya, stole his wallet and money, and fled in a white car with chrome rims. One of the men was carrying a rifle. Ocanas called the police, who arrived at the scene within a few minutes. Ocanas described the robbers as black men, wearing dark clothing and black stockings or beanie caps, and said they fled in a white, four-door car with chrome rims. Just minutes later, Peebles saw a car matching the description a few blocks away. A brief slow-speed chase ensued, during which Peebles saw Jimmy jump from the car and also saw a rifle being tossed from the rear right side of the car where appellant was seated. Pace ran from the scene, and both he and Jimmy were apprehended by the police. Appellant surrendered at the scene. Both Jimmy and appellant are black and were wearing dark clothing.

4

In addition, a black cap was seized from Jimmy and a black stocking cap was found in the getaway car. Finally, police retrieved the rifle thrown from the car. Having reviewed this evidence, we conclude a rational jury could have found it sufficiently tended to connect appellant to the aggravated robbery.

To support his position that there is insufficient non-accomplice evidence to corroborate Pace's testimony, appellant points out that Ocanas and Loya could not identify him as one of the robbers. Additionally, he complains about inconsistencies in statements made over dispatch that night and the absence of any contraband on appellant. The jury was entitled to resolve any conflicts in the evidence and the State was not required to present direct evidence of appellant's presence at the scene. We overrule the first issue.

In his second issue, appellant argues the trial court erred in excluding from the charge the definition of "firearm" found in section 46.01 of the Texas Penal Code. He asserts the definition was relevant because the evidence showed the shotgun or rifle was inoperable and the jury was entitled to such a definition in considering the element of use of a deadly weapon. We disagree.

The language of Chapter 46 limits its definitions to use with Chapter 46 offenses. *See* TEX. PENAL CODE ANN. § 46.01 (West Supp. 2012) (stating, "In this chapter" and then listing the definitions); *Garrison v. State*, 726 S.W.2d 134, 138 (Tex. Crim. App. 1987) (concluding trial court should not have included Chapter 46 definition of knife in aggravated robbery charge). Appellant was charged under section Chapter 29, and, in particular, section 29.03 of the penal code; consequently, the trial court did not err by refusing the Chapter 46 definition of firearm. Further, the charge defined "deadly weapon" as "a firearm, or anything manifestly designed, made or adapted for the purpose of inflicting death of serious bodily injury; or anything in the manner of its use or attempted use is capable of causing death or serious bodily injury." This

5

definition tracks the language of section 1.07(17) of the penal code.  *See* TEX. PENAL CODE ANN. § 1.07(17) (West. Supp. 2012).  We overrule the second issue.

In his third issue, appellant contends the trial court erred in refusing to charge the jury on the lesser-included offense of robbery.

A defendant is entitled to an instruction on a lesser-included offense when the lesser offense is included within the proof necessary to establish the offense charged and some evidence is presented that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense.  R*ousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).  As alleged here, robbery is a lesser-included offense of aggravated robbery, the difference between the two being the use or exhibition of a deadly weapon.  *See* TEX. PENAL CODE ANN. §29.02, 29.03(a)(2) (West 2011).  Thus, appellant was entitled to an instruction on robbery if any evidence exists in the record from which a rational jury could find that he did not use or exhibit a deadly weapon.  Appellant argues that because the evidence showed the rifle recovered was inoperable, the jury could have determined appellant did not use a deadly weapon and he was therefore entitled to a robbery instruction.  We disagree.

If the State proves at trial that a firearm was used in the commission of a robbery, the firearm meets the statutory definition of deadly weapon.  *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).  Moreover, the State is not required to verify that the firearm was actually capable of causing death, either in the manner of its actual or intended use.  *Id*.; *see also Walker v. State*, 543 S.W.2d 634, 636-37 (Tex. Crim. App. 1976).  In *Walker,* the court of criminal appeals held that an automatic pistol, recovered without a clip or firing pin, was a deadly weapon.  Using the definition of "deadly weapon" in section 1.07 of the penal code, the court reasoned that even if the clip and firing pin were missing at the time of the offense, the

pistol was "manifestly designed, made . . . for the purpose of inflicting death or serious bodily injury" and that this fact "was evident to the senses and understanding of the victim." *Id.* at 637.

Here, the evidence showed that both Ocanas and Loya believed they might be hurt or killed. Thus, even if the gun was not functioning at the time of the robbery, it qualifies as a firearm and thus a deadly weapon. *See Walker*, 543 S.W.2d at 637. Because the evidence showed appellant used and exhibited a deadly weapon during the course of robbing Ocanas, he cannot be guilty only of robbery. Consequently, the trial court did not err by refusing to submit the lesser-included charge of robbery to the jury. We overrule the third issue.

In his fourth issue, appellant complains the trial court erred in refusing to grant a mistrial following the State's improper jury argument. Appellant complains about the following highlighted statement made during the State's closing argument for the guilt-innocence phase:

> [PROSECUTOR]: . . .Now, this phase that we're in right now is called 'guilt or innocence.' The only question before you right now is: Did these Defendants commit an offense of aggravated robbery? Are they guilty or not guilty? That's the only question before you right now. *With regards to punishment, that's going to be up to the Judge to decide. And there will be more evidence presented later on for him to consider.*

Defense counsel objected it was "improper" to "talk about punishment and other things." The trial court sustained the objection, admonished the prosecutor to "stick with the issue", and instructed the jury to disregard. The trial court denied the request for a mistrial. The question is whether the trial court abused its discretion by denying a mistrial. *Archie v. State*, 340 S.W.3d 734, 738-39 (Tex. Crim. App. 2011).

To evaluate whether the trial court abused its discretion in denying a mistrial for improper argument, we balance the severity of the misconduct (the prejudicial effect), any curative measures, and the certainty of conviction absent the misconduct (the strength of the

evidence supporting the conviction). *Id.* at 739. Mistrials should be granted only when an objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Id.* In most cases, an instruction to disregard will cure the alleged harm. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

First, the prosecutor's argument was brief, was not repeated, and was contained within an argument in which the jury was expressly told the only issue was guilt-innocence. Moreover, while the prosecutor referenced "more evidence," he did not go into any detail. We do not think any prejudice was so great as to render a timely curative instruction ineffective.

Second, the trial court took curative measures by sustaining the objection, admonishing the prosecutor to "stick with the issue," and then immediately instructing the jury to disregard the prosecutor's last comment. The law generally presumes an instruction to disregard and other cautionary instructions will be obeyed by the jury. *Archie*, 340 S.W.3d at 741. The statements in this case were not so indelible that the jury would ignore an instruction to disregard them.

Finally, the State's case against appellant was strong. Despite his admission that he initially lied to the police and his acknowledgment regarding his previous criminal history and his mental issues, Pace testified in detail about his role and that of appellant and Jimmy Traylor in the aggravated robbery, and there was ample corroborating evidence. Minutes after the incident, police observed a white car with rims, matching the description of the getaway vehicle, only blocks away from the crime scene. Appellant was a passenger. When the police began to follow the car, Jimmy Traylor jumped out and ran. Soon after, a rifle was tossed out of the right rear window where appellant was seated. When Pace stopped the car and ran, appellant surrendered. In our view, the evidence supporting the conviction was strong, and the jury would

8

almost surely have convicted appellant regardless of the improper statement made at closing. Because we conclude the trial court did not abuse its discretion in refusing to grant a mistrial, we overrule the fourth issue.

We affirm the trial court's judgment.


/Molly Francis/
MOLLY FRANCIS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
120419F.U05

9



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BEN MELTON TRAYLOR, Appellant

No. 05-12-00419-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F10-51279-L.
Opinion delivered by Justice Francis;
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered March 20, 2013.


/Molly Francis/
MOLLY FRANCIS
JUSTICE